**Francis V. HEATER, Plaintiff-Appellee,**

v.

**The CHESAPEAKE AND OHIO RAILWAY COMPANY, Defendant-Appellant.**

**No. 73–1133.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 30, 1973.

Decided June 5, 1974.

John H. Gobel, James R. Gannon, Chicago, Ill., for defendant-appellant.

David P. Schippers, Chicago, Ill., for plaintiff-appellee.

Before CLARK *, Associate Justice, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

Francis Heater, plaintiff-appellee, brought this action to recover damages for personal injuries under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. The jury awarded damages to the plaintiff in the amount of $100,000. The defendant, the Chesapeake and Ohio Railway Company, appeals.

Viewing the evidence, as we must, from the point of view most favorable to the party prevailing on trial, it fairly establishes the following. Heater was employed by the defendant railroad as a carman, a job which required that he inspect and repair railroad cars. On March 3, 1969, the railroad's car foreman asked Heater and another employee to assist him in moving a load of yokes which were partially projecting through the door opening of a boxcar. Each yoke was approximately forty inches long, seven to eight inches wide at one end and ten to eleven inches wide at the other end, and each weighed over two hundred pounds. The yokes were stacked inside the boxcar approximately three levels high and six to eight across. The men did the work entirely by hand without the aid of any mechanical equipment.

While lifting one of the yokes, Heater felt a sharp pain in his back. Heater hesitated for a minute before he did any further work. He later mentioned to the foreman that he would like to take a short rest. Heater did, however, continue working that day. A few days thereafter the Trainmaster saw Heater limping and sent him to a doctor. In June 1971, surgery was performed on Heater's back. He had continued to work from the time of the accident until the operation. Thirteen days after the surgery, Heater suffered a heart attack and has not worked since then.

* Associate Justice Tom C. Clark (Retired) of the United States Supreme Court is sitting by designation.

The railroad raises a number of issues on appeal: (1) whether the district court properly submitted the matter to the jury; (2) whether the court abused its discretion in permitting plaintiff's counsel to call the car foreman as an adverse witness; (3) whether the court committed error in connection with the giving of instructions.

## I

The defendant contends that the plaintiff failed to present sufficient evidence of either negligence or causation to create a jury question. With respect to negligence, the railroad argues that yokes were often lifted by hand in repair work. There was, moreover, no mechanical device which could be effectively used, according to the defendant, to rearrange yokes inside a boxcar. The railroad thus contends that the mere fact that Heater was required to move the yokes by hand was not evidence of negligence. The railroad further argues that even if the requirement that the yokes be lifted is deemed negligence, the plaintiff failed to prove that the lifting was the cause of his back injury and subsequent heart problem. In particular, the defendant points out that, at the trial, Heater himself admitted not knowing the cause of his back pain:

"... I don't know whether I lifted crooked, whether I slipped, or anything—I don't know whether I done that, but I sure felt a pain in my back."

Under the Federal Employers' Liability Act, the plaintiff must show both negligence on the part of the employer and causation. "The Act does not make the employer an insurer." In-

man v. Baltimore & Ohio R. R. Co., 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959).

Having accorded the customary, albeit somewhat psittacistic, deference to the non-insurer aspect of the FELA defendant, we will now proceed to discuss that statute as it is. Before doing so, we observe that while the FELA in its terms does not purport to border on a workman's compensation act, certain parallelisms may be found. We will not assume that Congress is unaware of the judicial gloss that the Act has received. If the Act as it has been interpreted and applied does not correctly reflect what was intended by the legislative branch then the change must be made there. The duty of this court is to follow what is now well-established authority.

The quantum of evidence necessary to establish liability is much less in a FELA case than it would be in an ordinary negligence case. The FELA "was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence." Rogers v. Missouri Pac. R. R. Co., 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed. 2d 493 (1957) (footnotes omitted).

The test of a jury case, under the FELA, "is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury or death for which damages are sought." *Id.* at 506 (emphasis added).[1] The fact that there may have been a number of causes of the injury is, there-

---

[1]. As one commentator has noted, the Rogers formulation of the test for a jury case under the FELA "reduce[s] the extent of the negligence required, as well as the quantum of proof necessary to establish it, to the 'vanishing point.' While it is still undoubtedly true that there must be some shreds of proof both of negligence and of causation, and that 'speculation, conjecture and possibilities' will not be enough, there appears to

be little doubt that under the statute jury verdicts for the plaintiff can be sustained upon evidence which would not be sufficient in the ordinary negligence action." Prosser, The Law of Torts § 80, at 536 (4th ed. 1971) (footnotes omitted).

The Supreme Court itself has stated that "the power of decision in these actions [is] exclusively in the jury in all but the infrequent cases." *Rogers, supra* at 510.

fore, irrelevant as long as one cause may be attributable to the railroad's negligence. In passing on the issues of fault and causality, moreover, the jury has a broad power to engage in inferences. "The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). The jury's verdict can only be set aside "when there is a complete absence of probative facts to support the conclusion reached." Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946). The Supreme Court has repeatedly warned that in FELA cases, "courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & Pekin Union Ry. Co., *supra* at 35.

■ In the present case, under the established standards to which we have adverted, plaintiff presented sufficient evidence of both negligence and causation to present a jury question. The railroad had assigned only three men—Heater, the car foreman, and another employee—to the task of rearranging the yokes. Heater and the foreman worked together, each lifting one end of the same yoke. This meant that each man was continually lifting a heavy load. Moreover, the railroad admitted that it would have been possible to have the men push the yokes out of the boxcar on to the ground, without lifting the yokes. A mechanical crane could then have been used to reload the yokes. Such a procedure might have been inefficient in the sense that it would have taken more time, but it was, nonetheless, possible and would have avoided having the men lift the yokes by hand. Furthermore, the car foreman testified that this procedure would probably not have harmed the yokes. The jury could reasonably have inferred, on the basis of such evidence, that the railroad was negligent in failing to use a mechanical crane or, at least, in failing to assign more men to the task.

■ There was also sufficient evidence for the jury to find that Heater's back pain and subsequent heart attack were caused, at least in part, by the lifting of the yokes. Admittedly, Heater could not say whether the pain arose from lifting or whether his foot also slipped or he bent over at an odd angle. Heater did testify, however, that the pain definitely began while he was doing the lifting. Moreover, a cardiologist testified that Heater's heart problems were the direct result of the operation on Heater's back. The jury could reasonably conclude that the lifting of the yokes was at least *part* of the cause of Heater's back pain and heart attack. "Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury or death." Rogers v. Missouri Pac. R. R. Co., *supra* at 506–507 (emphasis added).

The question is not whether we would have reached the same conclusion as did the jury but rather whether there was sufficient evidence to permit the jury to reach the conclusion it did. Under established standards we must answer the question in the affirmative.

## II

The railroad next contends that the district court erred in permitting the plaintiff to call the railroad's car foreman, Henry Rzyski, as an adverse witness under Rule 43(b), Fed.R.Civ.P. this ruling prejudiced defendant's case, it is argued, since it allowed plaintiff's counsel to cross-examine and impeach Rzyski.

Rule 43(b) provides, in pertinent part:

"A party may call an adverse party or *an officer, director or managing agent* of a public or private corporation

**1248**

. . . which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party . . . ." (Emphasis added.)

Rzyski was clearly not an officer or director of the railroad. The issue becomes whether the district court could correctly characterize him as a "managing agent" of the railroad.

Rule 43(b) "does not provide that any employee of an adverse party may be called adversely." Hosie v. Chicago & North Western Ry. Co., 282 F.2d 639, 641 (7th Cir. 1960). An employee is a "managing agent" only if he acts with supervisory authority, being invested with general powers to exercise his discretion and judgment in dealing with corporate matters and his interests are identified with those of the corporation. Skogen v. Dow Chem. Co., 375 F. 2d 692, 701 (8th Cir. 1967); Brandon v. Art Centre Hosp., 366 F.2d 369, 372 (6th Cir. 1966).

In the present case, Rzyski was essentially a "gang boss." He personally inspected cars, wrote repair orders, and worked alongside his men on their jobs. His supervisory duties were limited to assigning carmen day by day to jobs, certifying that the men were at work, instructing men on how jobs were to be done, and seeing that accident reports were filled in and that injured men got to a doctor. Rzyski received his orders from a "car supervisor." Rzyski, moreover, had no power to hire or fire the men for his crew.

We find that such limited supervisory powers as Rzyski had are insufficient to make him a "managing agent" of the railroad. Rzyski, although he directed the work of his men, was far removed from having any general discretionary or managerial powers. See Dowell, Inc.

v. Jowers, 182 F.2d 576 (5th Cir. 1950), in which the Court held that an engineer in charge of the crew on which the plaintiff was working when injured was not a "managing agent."

The error in permitting Rzyski to be called as an adverse witness, however, in our opinion, does not require reversal. Having reviewed Rzyski's entire testimony, we are not convinced that the plaintiff gained any significant advantage by being able to cross-examine the foreman. We note, moreover, that if the plaintiff had not called Rzyski as an adverse witness, it is reasonable to assume that the railroad would have been under tactical compulsion to call him as a defense witness since Rzyski was in charge of the men lifting the yokes and was present when the injury occurred. If the railroad had so called Rzyski as a defense witness, plaintiff's counsel would have been able to cross-examine the foreman and impeach his testimony.[2]

The trial of a law suit has been termed a quest for the truth and we do not assume that the information to which Rzyski testified would have been less truthful if he had been called other than as an adverse witness. We do not look with approval upon the district court not adhering to the plain language of the Federal Rules of Civil Procedure, which are to govern the trial when applicable, but instead following the practice which apparently prevails in the state courts of the state in which the district court was sitting. We decline, however, to visit our displeasure on the successful litigant where we are not convinced that the error was other than harmless.

### III

The railroad argues, finally, that the district court erred in connection with the instructions which it gave to the jury.

2. Had the railroad failed to call Rzyski to testify, this failure to do so would undoubtedly have been the subject of comment by plaintiff's counsel, and such comments might well have been more detrimental to the railroad's case than plaintiff's cross-examination of Rzyski. Further, the failure to have called him in this event could have left plaintiff's testimony uncontradicted insofar as Rzyski did not agree with it.

The defense complains that the district court committed reversible error in giving an "assumption of risk" instruction. This instruction, using statutory language, essentially told the jury that the defense of assumption of risk is not available to a defendant in an FELA case.

■ As the plaintiff concedes, the use of an assumption of risk instruction in an FELA case has been condemned by this and other courts. Such an instruction is a confusing, negative statement which refers to issues not involved in an FELA case. "[T]he statutory elimination of the defense of assumption of risk, when read to the jury in FELA cases where that 'defense' has been neither pleaded nor argued, serves only to obscure the issues in the case." Casko v. Elgin, Joliet & Eastern Ry. Co., 361 F.2d 748, 751 (7th Cir. 1966). See also Almendarez v. Atchison, Topeka & Santa Fe Ry. Co., 426 F.2d 1095, 1098 (5th Cir. 1970); Dilley v. Chesapeake & Ohio Ry. Co., 327 F.2d 249, 253 (6th Cir. 1964); Seaboldt v. Pennsylvania R. R. Co., 290 F.2d 296, 300 (3d Cir. 1961). Despite the clear admonitions of this and other courts, however, the plaintiff, nevertheless, requested and obtained just such an assumption of risk instruction.

■ We are seriously concerned with whether or not reversal may be required by the giving of this instruction. The warnings of this court should not be ignored. In the instant case, assumption of the risk was not an issue. Arguably a jury might be confused when suddenly presented with an uncontested issue in jury instructions. We find no case, however, in which the giving of the improper assumption of risk instruc-

tion in an FELA case was *alone* held to be reversible error. Although a close question is created, particularly in view of the combination with the matter of treating Rzyski as an adverse witness, we will follow *Casko* in the present case and not reverse. We do wish to emphasize, however, that use of the improper assumption of risk instruction may be sufficient in other cases, when combined with other more substantial error, to constitute reversible error.

The railroad complains next of the district court's instruction concerning the present value of future damages. At the trial neither the plaintiff nor the defendant introduced any evidence suggesting a method for computing present value. In its instructions to the jury, the district court charged that any damage for loss of future earnings must be reduced to "present cash value." [3] The court did not instruct, however, on the method for computing present cash value. Although defense counsel neither tendered nor requested an instruction explaining the method of computation, the railroad now contends that the district court committed reversible error in failing so to instruct.

In raising this objection, the defense relies upon Ballantine v. Central R. R., 460 F.2d 540 (3d Cir. 1972), cert. denied, 409 U.S. 879, 93 S.Ct. 133, 34 L. Ed.2d 133 in which the Third Circuit held that where recovery is sought for future lost earnings, the plaintiff must submit evidence and the trial court must instruct on the method of reducing lost future earnings to present worth. The Third Circuit based its holding on the belief that "the application of the present worth rule is generally conceded

---

3. In its instruction the court charged, *inter alia*, that:
"In computing the damages arising in the future because of injuries, because of future medical expenses, or because of the loss of future earnings, you must not simply multiply the damages by the length of time you have found they will continue or by the number of years you have found that the Plaintiff is likely to live. In-

stead, you must determine their present cash value. 'Present cash value' means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of damages, expenses, and earnings at the time in the future when the damage from the injury will be suffered, the expenses must be paid, or the earnings would have been received."

**1250**

to be beyond the understanding and capabilities of most lay persons serving on juries." 460 F.2d at 543.

We cannot accept such a dismal evaluation of the capabilities of the average juror.[4] Rather, we prefer the position taken by the Sixth Circuit in Pennsylvania R. R. Co. v. McKinley, 288 F.2d 262 (6th Cir. 1961). In that case the court held that it was not reversible error to fail to instruct on the method of reducing an award to present value where the defense had not requested such an instruction. The Sixth Circuit specifically noted that:

> "[A] jury, unaided by specific testimony as to money values, could themselves, being told that the award should be only money value, properly apply the applicable rule. . . . Jurors are presumed to be intelligent people, generally aware, from today's economy and their own experience with it, of the earning value of money when placed in safe investments." 288 F.2d at 265.

The Eighth Circuit has recently taken the same position in Duncan v. St. Louis-San Francisco Ry. Co., 480 F.2d 79, 87 (8th Cir. 1973). In *Duncan*, as in *McKinley*, the court held that a general instruction that future damages must be reduced to present worth was sufficient, in absence of a request by defense for a specific charge concerning the method of computation.

 In the present case, the district court did instruct the jury that any damages for loss of future earnings must be reduced to "present cash value," a phrase which was then defined for the jury. Had the railroad wanted an instruction explaining the method of computation, defense counsel could easily have submitted one. This they failed to do. We hold that, under these circumstances, the instruction given by the district court was sufficient.

We have considered the other contentions raised with regard to the giving and refusing of instructions and are of the opinion that the district court adequately instructed the jury on both negligence and contributory negligence and that no reversible error is shown.

For the reasons set forth in this opinion the judgment of the district court is

Affirmed.

---

4. It is conceivable that a detailed and technical instruction, in the absence of trial testimony, as to the method of computing present value might be more confusing to a jury than would be the bare enunciation of the principle to which they could apply their common sense.