In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3704

ROCHESTER WALKER,

Plaintiff-Appellant,

v.

NORTHEAST REGIONAL COMMUTER RAILROAD
CORPORATION, doing business as METRA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97-C-304--Joan B. Gottschall, Judge.

Argued May 31, 2000--Decided August 31, 2000

   Before Flaum, Chief Judge, and Bauer and
Harlington Wood, Jr., Circuit Judges.

   Harlington Wood, Jr., Circuit Judge.  Plaintiff-
appellant Rochester Walker brought this claim
pursuant to the Federal Employers' Liability Act,
45 U.S.C. sec.sec. 51-61 ("FELA"), against
defendant-appellee Northeast Illinois Regional
Commuter Railroad Corporation ("Metra") for
injuries he sustained while moving a piece of
equipment from the floor to a table. The district
court granted summary judgment for Metra, and
Walker appeals.

I.  BACKGROUND

   On March 9, 1995, Walker was employed as a
machinist by Metra at the 49th Street Car Shop in
Chicago, Illinois. As part of Walker's duties for
the day, he assisted machinist Edward Greer in
replacing the blades on a Benton shear, which is
used for cutting sheets of metal. Each blade was
ten feet long, four inches high, one inch wide,
and weighed approximately 140 pounds. The men
were to move the first blade, from four-inch-high
wooden blocks on the floor, to a table
approximately three feet in height.

   Walker testified that the men followed proper

lifting procedure for the lift. The men squatted down and, facing each other, took hold of the ends of the blade. The lift was performed in unison. The men counted to three and, with backs straight and using their leg strength, lifted the blade about two and a half feet, placing it on the table. During the lift, Walker experienced pain in his back as the blade neared the height of the table. Walker testified that, when he experienced the back pain, the blade was at an angle, being higher near Greer's end. Walker made no estimate of the difference in the height of the ends of the blade. Both an overhead crane (hoist) and a forklift were available, but, due to the configuration of the shop, the men could not use either machine to lift the first blade./1

Walker filed a FELA claim against Metra for damages sustained in the lifting incident on January 15, 1997. He alleged negligence on the part of Metra: first, for violation of Metra Safety Rule B 83(c);/2 second, for requiring him to lift more than fifty pounds; and third, for failing to make mechanical lifting devices available for use in changing the blade./3 Metra moved for summary judgment, arguing that the lift was reasonably safe and done in conformity with Metra's lifting rules. The district court granted Metra's motion finding that Walker failed to offer any evidence of negligence by Metra. Walker filed a motion to reconsider which the district court denied. Walker filed this timely appeal.

## II. ANALYSIS

We review the district court's grant of summary judgment de novo. Miller v. American Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment is granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In our analysis, we must view all evidence and draw all reasonable inferences in the light most favorable to Walker, the non-moving party. See Miller, 203 F.3d at 1003.

Under the FELA, "Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. sec. 51. The intent of the FELA is to provide broad remedial measures for railroad employees. Lisek v. Norfolk and Western Ry. Co., 30 F.3d 823, 831 (7th Cir. 1994). In a FELA action, the railroad will be held liable if the employer's "negligence played any part, even the

slightest, in producing the injury." Id. at 832 (internal quotations and citations omitted). Although the plaintiff's burden is significantly lighter than in an ordinary negligence case, evidence of the defendant's negligence must be presented in order to survive a motion for summary judgment. Id.

Walker's first claim of negligence is based on the assertion that the difference in height between himself and Greer caused the blade to be lifted at an angle, resulting in a weight shift toward Walker. However, Walker failed to show any appreciable shift in weight as a result of the tilt in the blade. First, Walker could not estimate the degree of tilt, nor did he testify that the weight of the blade shifted toward him at any point during the lift. Second, the height difference between the men was mistaken by Walker's expert, Gary Mallen. In his deposition, Mallen understood Greer to be approximately six-feet-three-inches tall when, according to Walker's brief, Greer is approximately five-feet-eleven-and-a-half-inches tall. Walker is approximately five-feet-eight-inches tall. Under this misconception of difference in height, Mallen testified that due to the height differential Walker carried greater weight when the blade was lifted. Mallen could not estimate the amount of weight shift that resulted from the uneven lift, and no new evidence was presented once the mistake in Greer's height was corrected. The only estimate for tilt in the blade was given by Greer, who testified the tilt was, at most, one to two inches. There is no evidence that this alleged amount of tilt resulted in a significant weight shift; both Greer and Walker testified that they lifted in unison, on the count of three, and in the proper manner provided by the safety manual and safety videos, that is, lifting with straight backs and using their leg strength. Also, once the misconception in height difference was corrected, it is clear the men were similar in height as required under Metra Rule B 83(c).

Walker next argues that Metra was negligent by requiring him to lift more than fifty pounds. However, Walker did not offer any evidence that he was under a fifty-pound lifting restriction in his position as a Metra machinist. First, despite his assertions on appeal, Walker did not testify that fifty pounds was the maximum lift requirement for Metra machinists or that he was restricted to a fifty-pound weight limit. He only stated that machinists were required to lift fifty pounds. Second, Walker testified that he was unsure whether, as a machinist, he was in a heavy duty category that required him to lift up to one hundred pounds. Third, Walker testified that the lifting of the blade was generally

assigned to machinists and that it was "machinist's work." Additionally, three of the witnesses, including Walker's expert, testified that machinists occasionally were required to lift up to one hundred pounds. Walker relies on bid documents for the diesel house machinist and machinist inspector positions which state that employees must be able to lift approximately fifty pounds. These bid documents, submitted on the motion to reconsider, were not for the air-break room machinist position which Walker held and do not state that fifty pounds was the maximum machinists were required to lift./4

Walker cites Heater v. Chesapeake and Ohio Railway Co., 497 F.2d 1243 (7th Cir. 1974), and Harbin v. Burlington Northern Railroad Co., 921 F.2d 129 (7th Cir. 1990), to support his position. However, both Heater and Harbin are distinguishable from the case at bar. The plaintiff in Heater had to continually lift throughout the day a heavier load than in the present case when alternate methods were available./5 Heater, 497 F.2d at 1247. The lift required of Walker was a one-time lift of approximately seventy pounds. The plaintiff in Harbin showed evidence of the railroad's negligence through its disregard of complaints made by the employees./6 Harbin, 921 F.2d at 131. Additionally, in Harbin, the plaintiff showed the availability of alternative methods and safeguards that would ensure employee safety. Id. Walker stated in his testimony that he accepted the job of changing the blade because he assumed that he and Greer could pick up the blade with no problem. The blade had been changed manually before this incident, and no evidence was presented that Walker or any other machinists had complained about problems in changing the blade on other occasions.

Finally, Walker argues that Metra was negligent in configuring the shop in such a way as to prohibit the use of mechanical lifting aids. However, Walker failed to show that lifting the blade manually was not a reasonably safe method. Safer methods of lifting may be available, but Metra need only use a reasonably safe method for lifting the blade. See Taylor v. Illinois Cent. R.R. Co., 8 F.3d 584, 586 (7th Cir. 1993) (citation omitted). Walker testified that he and Greer assumed that they could pick up the blade and place it on the table with no problem. The lift complied with Metra Rule B 82(h) which requires that in cases in which mechanical equipment is unavailable, heavy work should be done with the assistance of fellow workers. Walker's expert testified that it was better to use a mechanical device to lift whenever possible, but agreed that machinists are

occasionally required to manually lift up to one hundred pounds. Overall, the lift was within the requirements of a machinist and performed in a reasonably safe manner according to Metra's safety requirements. Walker presents no evidence of negligence on the part of Metra.

III.  CONCLUSION

The district court's grant of summary judgment is

AFFIRMED.

/1 According to Walker's deposition, if they had tried to use the hoist it would have been dangerous because they would need to swing the blade three or four feet from the hoist to the table area. The men were not able to use the forklift because there was a table, bolted to the floor, in the way.

/2 Metra Safety Rule B 83(c) provides, "When two or more persons handle heavy or bulky material or objects, the following precautions must be taken: . . . Place workers according to size, strength, and experience." While Walker also cites to Metra Safety Rule B 83(e), relating to the necessity of coordinating team lifts, his own testimony shows that the lift was coordinated as required by Metra regulations.

/3 Metra Safety Rule B 82(h) provides that when lifting: "Heavy work should be done with mechanical equipment where available; otherwise, with the assistance of fellow workers."

/4 The bid documents are of no help to Walker, therefore, we will not address Metra's arguments as to their timeliness.

/5 The plaintiff in Heater was employed by the railroad as a carman, inspecting and repairing railroad cars. Heater was asked to help unload a boxcar full of yokes that weighed over two hundred pounds each. Heater, 497 F.2d at 1245.

/6 The plaintiff in Harbin cleaned the heating boilers in the "roundhouse" once a year. The work area was not ventilated and became filled with exhaust fumes and flooded with soot and debris from cleaning the boiler. The railroad had received repeated complaints about the inadequate ventilation from Harbin and other employees but took no action. Harbin, 921 F.2d at 131.