In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2724

ROGER S. DARROUGH,

*Plaintiff-Appellant,*

*v.*

CSX TRANSPORTATION, INC.,
A RAILROAD CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 01-59-C-Y/H—**Richard L. Young**, *Judge.*

ARGUED JANUARY 17, 2003—DECIDED MARCH 4, 2003

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Every day, cat owners see accidents that result when there's no kitty litter around. But it seems quite odd to have a case where a human blames his own accident on the absence of kitty litter. This, however, is such a case.

Roger Darrough, 46, has worked for the CSX railroad (or one of its predecessors) for 26 years. From 1991 until his accident in June 2000, he was assigned to the railroad's bridge department. In the spring of 2000, Darrough was working on the Gumlick Bridge in Kentucky, which, at 131 feet, was the highest bridge he had ever worked on.

And being up that high was, according to Darrough, "really spooky, very spooky." His crew was removing old pine ties and replacing them with oak ties.

By the time of the accident the new ties had been laid, and the crews were working on the guardrail. That day, Darrough, who was responsible for carrying the pins used to secure the guardrail, walked 100 feet to pick up some pins, then returned to where he was working. When he got back, his foot slipped between two ties (which were 6 to 8 inches apart) and fell through. But he didn't fall to the ground. As his brief puts it, "His leg went between the ties and sank down approximately 21 inches." No one witnessed the actual fall. Darrough says he suffered foot and knee injuries, along with an array of emotional injuries resulting from fear that he would actually fall off the 131-foot-high bridge.

Darrough claims he fell after slipping on creosote, a substance that is applied to railroad ties in order to preserve them. But creosote also has a tendency to seep out and create slippery conditions on hot days. Substances such as kitty litter, dirt, dry concrete, or sand can provide traction and are often applied to combat the slippery conditions. Under CSXT policy, all of the members of Darrough's crew were encouraged to use the company credit card to purchase kitty litter (or a similar substance) to bring to the bridge if they felt the conditions were dangerous. Although the crew had been working on the Gumlick Bridge for about a month before Darrough fell, no one had taken advantage of that offer. None of the workers brought anything to counteract the effects of creosote in the weeks after Darrough's fall, either.

The day after the incident, Darrough's co-workers and supervisors met to determine the cause of the fall and to discuss ways to prevent similar incidents. The report from the meeting concluded that the fall resulted from

Darrough not being "focused on where his feet were placed on the tie," though creosote was listed as a possible factor.

Darrough sued under the Federal Employers' Liability Act, 45 U.S.C. § 51, claiming that CSXT negligently failed to provide him with a reasonably safe place to work. The district court denied CSXT's motion for summary judgment. After a 3-day bench trial, the court found that Darrough's fall was the result of his own negligence and that CSXT was not negligent. Darrough appeals that ruling. He also argues that what the district court referred to as Darrough's negligence was really just his assumption of the risks of working on the railroad, and the hoary tort defense of "assumption of risk" is barred under the FELA.

We review the district court's factual findings for clear error, *Reynolds v. City of Chicago*, 296 F.3d 524, 527 (7th Cir. 2002). Under the FELA, Darrough need only show that the employer's negligence "played any part, even the slightest, in producing the [employee's] injury." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506 (1957). The question is whether the railroad exercised reasonable care in creating a reasonably safe working environment, not whether that working environment could have been safer. *See Walker v. Northeast Reg'l Commuter R.R. Corp.*, 225 F.3d 895, 899 (7th Cir. 2000).

To support his claim, Darrough says he warned his supervisor a month before the accident that the ties were getting slick, yet the supervisor did not take any action. He also points to the testimony of several of his co-workers that creosote was bleeding out of the ties, making their work area slippery.

In response, CSXT notes that Darrough originally (during an early deposition) said that there was nothing unusual about the level of creosote on the ties and that his fall was caused by his becoming "off stride." CSXT

also points to the testimony of Darrough's supervisors that they frequently inspected the bridge and did not find an excessive amount of creosote or an unsafe environment.

After hearing all of the evidence, the district court came to the reasonable conclusion that "[m]ost likely, Darrough's leg slipped between two ties because he misjudged where he placed his foot and, as he pivoted to face the rail and guard timber where he was placing the lag bolts, his foot went between the ties." Given that Darrough said almost the same thing in his deposition, we find no clear error in the district court's determination.

Even if creosote was responsible for the fall (a possibility, even though neither Darrough nor his co-workers thought the ties were so slick as to warrant putting down kitty litter), the finding that CSXT was not negligent has support in the record. Darrough and his co-workers could have bought kitty litter or a similar product at the company's expense at any time if they thought the situation was dangerous. Darrough seems to suggest that CSXT should have had such a substance on site. But, as we have said, CSXT did not have to create the safest possible work environment (which likely would include an inefficient daily dousing of kitty litter, whether it was necessary or not), only a reasonably safe one. CSXT made Darrough's environment safe by offering workers the time and money to obtain sand or kitty litter whenever they thought the ties were becoming slippery.

Darrough's assumption-of-risk argument is equally unpersuasive. Darrough argues that what the district court considered to be Darrough's contributory negligence is really just the assumption of the risk of dangerous railroad working conditions. That is, Darrough says he had to accept dangerous working conditions in order to have a job with the railroad, a requirement that is barred by the FELA.

Darrough's argument ignores the fact that the district court found that Darrough simply put his foot in the wrong place and that the workers had the power to address any slippery conditions they encountered. Darrough's theory only holds if CSXT forced him to work in an unsafe environment, and, for the reasons we just discussed, the district court reasonably found that it did not. While there is certainly some inherent danger in replacing railroad ties on a high bridge, employees were able to work safely by paying attention to what they were doing, something Darrough, by his own admission, apparently did not do. Accordingly, the district court's judgment is AFFIRMED.

A true Copy:

    Teste:


_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*