In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 18-2068 & 18-2153

MARVIN ABERNATHY,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

EASTERN ILLINOIS RAILROAD COMPANY,

*Defendant-Appellant, Cross-Appellee.*

_____

Appeals from the United States District Court for the
Central District of Illinois.
No. 3:15-cv-03223-SEM-TSH — **Sue E. Myerscough**, *Judge.*

_____

ARGUED FEBRUARY 6, 2019 — DECIDED OCTOBER 16, 2019

_____

Before KANNE, SYKES, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. Plaintiff Marvin Abernathy was injured while working for defendant Eastern Illinois Railroad Company. He sued under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., alleging that the Railroad negligently failed to provide reasonably safe working conditions by failing to provide appropriate equipment for the job he was doing when he was hurt.

A jury awarded Abernathy $525,000 in damages. The Railroad moved for judgment as a matter of law or a new trial. The district court denied both requests, and the Railroad has appealed, raising a host of issues. Abernathy has filed a cross-appeal asserting that the district court erred by not awarding him sufficient costs to cover his expert witness fees. We affirm Judge Myerscough's decisions in all respects.

I.   *Facts*

Abernathy worked as a track inspector for the Eastern Illinois Railroad Company. His duties included replacing and repairing railroad ties. On September 13, 2012, the Railroad sent Abernathy and another employee, Richard Probus, to repair a railroad crossing about six or seven miles away from the Railroad's yard in Charleston, Illinois. Abernathy was in charge of the job. The repair required him and Probus to transport six ties from the yard to the crossing.

In 2012, the Railroad had a "tie crane," a vehicle that runs on the railroad tracks and is well-suited to transporting railroad ties, but it had been out of commission for years. Abernathy and Probus had only two options for transporting the ties: a backhoe or a pickup truck, either of which would need to travel on public roads rather than railroad tracks. Abernathy chose to use the backhoe. He testified that he had never used the pickup truck to haul ties before, but that he had used the backhoe for similar jobs numerous times, although not on public roads and not with this heavy a load. Abernathy and Probus loaded four ties into the bucket of the backhoe and two across the top of the bucket, resting on the arms of the machine. Abernathy testified that when the bucket is rolled back, it locks the resting ties into place. Abernathy drove the

backhoe along a public highway. Probus followed in the pickup, which was loaded with tools needed to install the ties.

Abernathy drove in low gear, but he started to experience "road bounce." He started braking, and two ties fell out of the backhoe's bucket. Abernathy stopped on the shoulder of the road and tried to lift the ties back into the bucket. In lifting a tie, he injured his back. He also smashed a finger between the tie he was holding and another tie in the bucket. Despite the accident, Abernathy and Probus were able to finish reloading the ties, and they resumed their trip and finished the repair job. Abernathy remained in pain for the rest of the day.

The following morning, Abernathy reported the injury to Tim Allen, the general manager of the Railroad. Allen told him "to take it easy" and "be on light duty" for a while. Abernathy worked through the pain on lighter duty for the next year but was unable to return to his regular work. The Railroad terminated his employment in February 2014. He eventually had physical therapy, epidural injections, and then surgery in 2016. After the surgery, he continued to experience pain in his back and legs. At the time of trial, his surgeon had still not cleared him for any type of work.

II. *The Trial*

Abernathy sued the Railroad under the FELA, 45 U.S.C § 51, alleging that it had been negligent in failing to provide an operable tie crane and requiring him to use the backhoe, which was inadequate for his assigned task of transporting the ties. The trial lasted three days. Abernathy testified and called three other lay witnesses: his wife Carrie Abernathy, Richard Probus, and Lowell McElwee, a Railroad engineer who worked with Abernathy.

Probus testified that on the day of Abernathy's injury, they could not have used the pickup truck to transport the ties because they needed the pickup truck to transport the other equipment needed to install the ties. Probus also testified that the Railroad had acquired an operable tie crane after Abernathy's accident. Probus explained that the tie crane was now being used to transport ties and that manual lifts of ties were not necessary with the new machine. He stated that the availability of the tie crane makes his job safer.

Abernathy testified that when the Railroad's tie crane had been operational, he used it regularly. He explained that the tie crane was the preferred method for moving ties because it did not require manual lifting or traveling on public roads. He also testified that before his 2012 injury, he had repeatedly asked the Railroad to replace the tie crane.

Abernathy also presented the depositions of Doctors Renu Bajaj, James Kohlman, and Thomas Lee. Dr. Lee, Abernathy's surgeon, offered testimony relevant to damages and causation. He testified that he did not expect Abernathy to regain the level of functionality he had prior to his accident. He also testified that Abernathy certainly would not be able to return to work involving heavy manual labor. Dr. Lee also said that, to a reasonable degree of medical certainty, Abernathy's symptoms were caused or aggravated by the lifting accident in September 2012.

The Railroad called four witnesses: general manager Tim Allen; Everett Fletcher; Gayle Garrett, the office secretary for the Railroad; and Kendall Mulvaney, the superintendent of R&R Contractors, testifying as an expert witness in railroad repair and maintenance. The Railroad defended on the theory

that a backhoe is a generally accepted method for transporting ties in the rail repair industry.

After the close of Abernathy's case-in-chief, the Railroad moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which the court denied. The Railroad renewed its motion under Rule 50(b) at the close of all evidence and prior to the verdict, and the court again denied it.

The jury found that the Railroad was negligent and that its negligence contributed to Abernathy's injuries. The jury calculated Abernathy's total damages to be $750,000. However, the jury found that Abernathy was also at fault for thirty percent of the total fault, which meant the jury awarded a net verdict of $525,000. The district court denied the Railroad's post-trial motions for judgment as a matter of law or a new trial. The district court also awarded costs to Abernathy as the prevailing party but rejected his request to include as costs $3,800 in witness fees paid to Doctors Lee and Bajaj. The Railroad has appealed the judgment against it, and Abernathy has cross-appealed the denial of his request for expert witness fees as part of his costs.

III. *Legal Analysis*

We take up the issues on appeal in three groups. First, we address the Railroad's arguments for judgment as a matter of law on the theory that Abernathy's evidence was insufficient. Second, we address the Railroad's arguments that the district court abused its discretion in admitting certain evidence at trial. Third, we address Abernathy's cross-appeal on the award of costs.

A.  *Judgment as a Matter of Law*

The FELA provides a federal remedy for railroad employ-
ees who are injured on the job. To prove a claim under the
FELA, a plaintiff must prove "the traditional common law el-
ements of negligence, including foreseeability, duty, breach,
and causation." *Fulk v. Illinois Central Railroad Co.*, 22 F.3d 120,
124 (7th Cir. 1994). However, "[b]ecause it is meant to offer
broad remedial relief to railroad workers, a plaintiff's burden
when suing under the FELA is significantly lighter than in an
ordinary negligence case." *Holbrook v. Norfolk Southern Rail-
way Co.*, 414 F.3d 739, 741–42 (7th Cir. 2005); see also *Harbin v.
Burlington Northern Railroad Co.*, 921 F.2d 129, 131 (7th Cir.
1990) ("It is well established that the quantum of evidence re-
quired to establish liability in an FELA case is much less than
in an ordinary negligence action."). A railroad-employer is li-
able where "employer negligence played any part, even the
slightest, in producing the injury." *Rogers v. Missouri Pacific
Railroad Co.*, 352 U.S. 500, 506 (1957).

The Railroad challenges the sufficiency of evidence as to
all elements of negligence. We consider duty and breach to-
gether, and foreseeability and causation separately. "This
Court reviews sufficiency of the evidence challenges *de novo*,
viewing the evidence in the light most favorable to the non-
moving party and drawing all inferences in [his] favor."
*Crompton v. BNSF Railway Co.*, 745 F.3d 292, 295 (7th Cir. 2014).
We "will overturn a jury verdict 'only when there is a com-
plete absence of probative facts to support the conclusion
reached.'" *Id.* at 295–96, quoting *Lavender v. Kurn*, 327 U.S. 645,
653 (1946). Here, probative evidence supported the jury's ver-
dict that Abernathy established each element of negligence.

The district court did not err in declining to overturn the jury's verdict.

   1. *Duty & Breach*

The Railroad had a duty to provide Abernathy a reasonably safe working environment. See *Crompton*, 745 F.3d at 296. The Railroad points out correctly that it "could have provided a reasonably safe workplace notwithstanding the fact that safer workplace alternatives exist." *Taylor v. Illinois Central Railroad Co.*, 8 F.3d 584, 586 (7th Cir. 1993). The Railroad argues that Abernathy produced no evidence that the equipment available to haul ties (the backhoe and pickup truck) and the way in which he was trained to perform a manual lift were unsafe. Instead, Abernathy produced evidence pertaining to the absence of the tie crane. The tie crane evidence, the Railroad argues, showed only that there was a safer alternative to the backhoe and pickup, which is not sufficient to establish negligence. See *Darrough v. CSX Transportation Inc.*, 321 F.3d 674, 676 (7th Cir. 2003) (railroad does not have duty to provide the *safest* working environment).

The Railroad's argument relies on the faulty premise that evidence of safer alternatives can never even be relevant to whether an employer exercised reasonable care. When a railroad assigns an employee a task using a particular method and the employee is injured while executing the task, evidence of a safer alternative method is relevant to whether the method provided was reasonable. See S*tone v. New York, Chicago & St. Louis Railroad Co.*, 344 U.S. 407, 409 (1953) (plaintiff was injured pulling ties using the method his supervisor instructed him to use; evidence of three alternative methods for pulling ties was relevant to whether railroad was negligent). Based on all the evidence presented, the jury could reasonably

have found that it was not reasonably safe to assign Aber-
nathy to replace the ties without an operable tie crane.

The Railroad's argument as to the safety of a manual lift is
similarly flawed. Abernathy did not argue that under all cir-
cumstances, the Railroad is negligent if it requires an em-
ployee to perform a manual lift. He argued that the Railroad
was negligent where it could have provided employees with
equipment that prevented the need for impromptu manual
lifts on public roads but chose not to repair or replace this
equipment.

The Railroad's reliance on *Walker v. Northeast Regional
Commuter Railroad*, 225 F.3d 895 (7th Cir. 2000), is thus mis-
placed. In *Walker*, we affirmed summary judgment for a rail-
road in an FELA case for injuries from performing a manual
lift. Plaintiff Walker worked as a machinist in a repair shop.
He injured his back lifting a replacement blade for a machine
that cut metal. *Id.* at 896. The blade weighed about 140
pounds, and Walker lifted it with one other employee. *Id.* A
crane and a forklift were available to the men but could not be
used to assist in the lift because of the configuration of the
shop. Walker argued that his employer was negligent in re-
quiring him to lift more than fifty pounds and "in configuring
the shop in such a way as to prohibit the use of mechanical
lifting aids." *Id.* at 898.

*Walker* is distinguishable. First, Walker actually made an
explicit argument that his employer's demand that he lift
more than fifty pounds was sufficient by itself to support a
finding of negligence. In rejecting this argument, we con-
trasted the case with those in which plaintiffs "showed the
availability of alternative methods and safeguards that would
ensure employee safety" and found telling that Walker

produced no evidence that he or any other machinists "had complained about problems in changing the blade on other occasions." *Id.* In this case, Abernathy offered evidence of safer alternatives and prior employee complaints about the lack of an operable tie crane. As to the second argument about the shop configuration, Walker presented no evidence that the manual lift in his case was not reasonably safe given the circumstances, and in fact he "testified that he and [his co-lifter] assumed that they could pick up the blade" with no problem. *Id.* at 899.

Here, however, Abernathy offered evidence that the tie crane was the appropriate equipment to use for the job he was performing with a backhoe on the day he was injured. Allen's testimony on cross-examination and Probus's testimony allowed the jury to find that the pickup truck was not an adequate alternative. Abernathy and Probus both testified that an operable tie crane made their work safer. Abernathy explained that the tie crane allowed employees to avoid manual lifts and traveling on public roads. The jury could reasonably have found that the Railroad did not provide Abernathy with equipment appropriate for the task he was assigned and that his working environment was not reasonably safe.

### 2. *Foreseeability*

Abernathy was required to show that it was foreseeable to the Railroad that transporting ties using a backhoe or pickup as opposed to a tie crane "would or might result in a mishap and injury." *CSX Transportation, Inc. v. McBride*, 564 U.S. 685, 703 (2011), quoting *Gallick v. Baltimore and Ohio Railroad Co.*, 372 U.S. 108, 118, n.7 (1963). To establish foreseeability, "a plaintiff must show that the employer had actual or constructive notice" of potential harm. *Holbrook v. Norfolk Southern*

*Railway Co.*, 414 F.3d 739, 742 (7th Cir. 2005). The railroad may be liable "even if 'the *extent* of the [injury] or the *manner* in which it occurred' was not 'probable' or 'foreseeable.'" *McBride*, 564 U.S. at 703–04, quoting *Gallick*, 372 U.S. at 120–21 & n.8 (alteration in *McBride*; emphasis added here). The Railroad argues that Abernathy failed to prove negligence because he failed to show that his injury was foreseeable. The Railroad argues that it could not have known that Abernathy would use the backhoe or that doing so would result in dropped ties. The backhoe, the Railroad points out, had been used to transport ties without incident on multiple prior occasions and there was no defect in the machine that caused the tie to fall. Further, as the Railroad's expert, Mulvaney, testified, a backhoe was an accepted method in the railroad repair injury for transporting ties. From these facts, the Railroad contends there was insufficient proof of foreseeability.

The Railroad's argument misunderstands what the FELA requires. Abernathy does not need to show that the Railroad could have foreseen the particular consequences of its negligence. He needed to show only that "a particular condition"—here, the absence of appropriate equipment—"would or *might* result in" any type of "mishap and injury." *McBride*, 564 U.S. at 703, quoting *Gallick*, 372 U.S. at 118 n. 7 (emphasis added here); see *Gallick*, 372 U.S. at 118–20 (potential harm was foreseeable where railroad had allowed stagnant pool of filthy water to remain near worksite and employee was bitten by an insect, which led to infection and ultimately amputation of both legs). Abernathy needed to show only "circumstances which a reasonable person would foresee as creating a potential for harm." *McGinn v. Burlington Northern Railroad Co.*, 102 F.3d 295, 300 (7th Cir. 1996).

The evidence here supported a finding that a reasonable person in the Railroad's position could have foreseen that transporting ties in a backhoe or pickup could lead to injury. The Railroad knew that its tie crane had not been operational since 2008. Abernathy offered evidence that he had repeatedly asked the Railroad to repair or replace it. Abernathy and Probus both testified that the tie crane was safer to use in hauling ties, in part because it prevented employees from having to lift ties manually and travel on public roads.

### 3. *Causation*

In support of judgment as a matter of law, and now on appeal, the Railroad argued that even if it was negligent in failing to provide a tie crane, Abernathy failed to prove that the alleged negligence caused his injuries. Abernathy's manual lift, the Railroad contends, caused his injuries, and this lift was an act subsequent to and independent of any safety issues that arose because the tie crane was not available.

The Railroad's argument conflicts with the liberal causation standard under the FELA. "Juries in such cases are properly instructed that a defendant railroad 'caused or contributed to' a railroad worker's injury 'if [the railroad's] negligence played a part—no matter how small—in bringing about the injury." *McBride*, 564 U.S. at 705; see also *Harbin v. Burlington Northern Railroad Co.*, 921 F.2d 129, 131 (7th Cir. 1990), quoting *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 506 (1957) ("For under the FELA, 'the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even in the slightest*, in producing the injury… .") (emphasis in *Harbin*). "The FELA vests the jury with broad discretion to engage in common

sense inferences regarding issues of causation and fault." *Crompton v. BNSF Railway Co.*, 745 F.3d 292, 296 (7th Cir. 2014).

There was sufficient evidence here that the Railroad's negligence played a part in bringing about Abernathy's injury. Abernathy had to use the backhoe on a public roadway to transport the ties because the Railroad had not repaired or replaced its tie crane, which had been out of service for years. Vibrations caused a tie to fall off the backhoe and onto the public roadway that Abernathy was forced to use because of the absence of a tie crane. Abernathy had to remove the tie, which was obstructing the public road, and he had to do it quickly. He had no option other than to lift the tie manually back into the backhoe, which injured his back. A reasonable jury could infer that the Railroad's negligence played some part in causing Abernathy's injury. The district court correctly denied the Railroad's motion for judgment as a matter of law.

B. *New Trial Motion Based on Evidentiary Rulings*

The Railroad also argues that the district judge erred in three decisions to admit evidence, contending that each is sufficient to warrant a new trial. We review the denial of a new trial motion for an abuse of discretion. See, e.g., *Johnson v. General Board of Pension & Health Benefits of United Methodist Church*, 733 F.3d 722, 730 (7th Cir. 2013); *Kossman v. Northeast Illinois Regional Commuter Railroad*, 211 F.3d 1031, 1036 (7th Cir. 2000). We find no abuse of discretion in any of the challenged evidentiary rulings.

1. *Testimony of Timothy Allen*

First, the Railroad objects to a line of cross-examination of its general manager, Timothy Allen, regarding his own use of a company pickup truck to transport railroad ties. The

Railroad argues that Allen's use of the truck was so dissimilar from the way Abernathy might have used the truck on the day he was injured as to make the evidence irrelevant.

Again, Abernathy had to prove that the Railroad did not provide a reasonably safe method for transporting railroad ties. See *Brown v. Western Railway of Alabama*, 338 U.S. 294, 297–98 (1949). The Railroad argued that the pickup truck was a reasonably safe and available way for Abernathy to do his job. Allen testified that he thought Abernathy should have used the pickup truck rather than using the backhoe to haul ties on a public road.

During cross-examination, Allen acknowledged that on one occasion, he had used the same pickup to take 20 to 25 rejected railroad ties to a friend. Allen admitted that, assuming each tie weighed just 140 pounds, hauling 20 ties would have meant the pickup truck was carrying 2,800 pounds.[1] The pickup truck was rated to haul only 1,500 pounds. When asked about this discrepancy, Allen said he had not been aware that he had been operating the pickup truck at almost double its load capacity. Probus later testified that he and Abernathy chose not to use the pickup on the day of Abernathy's injury because they could not use it to haul both the ties and the tools needed for the job.

Judge Myerscough acted well within her discretion in allowing this line of cross-examination. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable

---

[1] The jury heard conflicting testimony regarding the weight of railroad ties. For purposes of this line of questioning, it was assumed that the average railroad tie weighs 140 pounds.

or less probable than it would be without the evidence. Fed. R. Evid. 401. The testimony about Allen's previous use of the pickup satisfied this definition. It was relevant for the jury to know that when Allen testified that the pickup truck was a reasonably safe alternative method available to Abernathy—a key point for the Railroad's defense—he was not familiar with the pickup's hauling capacity. That rebuttal was especially relevant given Probus's testimony that he and Abernathy chose not to use the pickup in part because of the truck's load limit.

### 2.  *Testimony about ADM*

Second, the Railroad objects to the admission of evidence regarding the financial ties of its expert witness, Kevin Mulvaney, to the Railroad's parent company, the agribusiness giant Archer Daniels Midland Company ("ADM"). Before trial, the district court had granted the Railroad's unopposed motion in limine barring mention of its relationship to ADM. At trial, the court reversed that ruling after Abernathy's counsel explained that they had not known before trial that Mulvaney would testify. The district court let Abernathy's counsel ask Mulvaney whether ADM was the largest customer of his employer. He answered "yes." In response to the next question, Mulvaney said he did not know whether ADM was the Railroad's parent company.

The court did not abuse its discretion in allowing these questions. Bias is a "permissible and established basis of impeachment." *United States v. Abel*, 469 U.S. 45, 50 (1984) (holding that government's evidence as to a defense witness's bias was properly admitted). Bias is the "quintessentially appropriate topic for cross examination." *Bachenski v. Malnati*, 11 F.3d 1371, 1375 (7th Cir. 1993). We have held repeatedly that

parties should be granted reasonable latitude in cross-examining witnesses for bias. See, e.g., *United States v. Manske*, 186 F.3d 770, 777 (7th Cir. 1999), citing *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir. 1978).

The information involving ADM did not become relevant to bias until Mulvaney took the stand. In choosing to call an expert witness with economic ties to ADM, the Railroad made its parent-subsidiary relationship with ADM relevant to show potential bias on the part of Mulvaney. The district court did not abuse its discretion by allowing this evidence of arguable bias.

### 3. *The Tie Crane Evidence*

The Railroad's third evidentiary challenge is to admission of evidence regarding the tie crane. The Railroad argues on appeal, as it did at trial, that this evidence is not relevant to whether the available methods of transporting ties when Abernathy was injured (i.e., the backhoe and the pickup truck) were reasonably safe. The Railroad also contends that this evidence confused the jury because it implied that the Railroad had a duty to employ the safest methods available, instead of just reasonably safe methods. The Railroad is particularly critical of the court's admission of evidence that it bought a new tie crane after Abernathy's injury. (The Railroad's briefs on appeal do not cite Federal Rule of Evidence 407, which addresses evidence of subsequent remedial measures, but its arguments invoke that rule's rationale.)

As explained above, the Railroad is right that an employer can provide a reasonably safe workplace even if safer workplace alternatives exist, and evidence of a safer alternative is not conclusive evidence of negligence. See *Taylor v. Illinois*

*Central Railroad Co.*, 8 F.3d 584, 586 (7th Cir. 1993) ("proof of a safer alternative is not necessarily proof of negligence"). Nevertheless, evidence of safer alternative methods is still relevant to show that the available methods were not reasonably safe. See *Stone v. New York Central & St. Louis Railroad Co.*, 344 U.S. 407, 409 (1953). Such evidence is relevant to show industry standards and to establish whether a given method is reasonably safe relative to alternatives. See *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 503 (1957) (reinstating jury verdict for injured employee in light of evidence of safer alternative method). Thus, evidence of the tie crane was relevant to the issues of duty and breach, and specifically to determine whether the methods the Railroad made available to Abernathy were in fact reasonably safe. The jury was permitted to make inferences from evidence presented on an alternative method, the tie crane. That does not mean the jury applied an incorrect standard (requiring the safest possible workplace). The jury instructions stated correctly that the applicable standard is that the "FELA requires defendant to exercise reasonable care to provide a reasonably safe workplace."

The evidence that a new tie crane was purchased after Abernathy's injury was also admissible. Rule 407 generally prevents admission of evidence of subsequent remedial measures to prove fault, but the rule and our precedents expressly permit this evidence if, among other reasons, "the feasibility of the remedial measure" is contested. See, e.g., *Ross v. Black & Decker Inc.*, 977 F.2d 1178, 1184–85 (7th Cir. 1992) (affirming admission of subsequent remedial measures where defendant disputed feasibility).

In this case, the Railroad chose to contest the feasibility of both purchasing a new tie crane and fixing the old one. At trial

and in deposition testimony, the Railroad's witnesses offered several reasons why the Railroad chose not to make a tie crane available in the four years or so between the original tie crane's breakdown and Abernathy's injury. These reasons included that the cost of repairing the original tie crane or buying a new one was prohibitively high, that the original tie crane was not used enough to justify the expense, and that the Railroad was concerned that any money spent would be wasted because Abernathy would misuse the machine so that it would soon break down again.

We can assume that if the Railroad had chosen to stipulate before trial to the feasibility of making a tie crane available to Abernathy, he would not have been allowed to present evidence of the post-injury purchase of a new tie crane. See *Ross*, 977 F.2d at 1185. But the Railroad could not both dispute feasibility and block Abernathy from introducing contrary evidence to show that it would have been feasible to replace the equipment. If the Railroad was concerned that the jury might use this evidence to infer negligence improperly, it also could have requested a limiting jury instruction. It did not. See *Trytko v. Hubbell*, *Inc.*, 28 F.3d 715, 725 (7th Cir. 1994), citing *United States v. Murzyn*, 631 F.2d 525, 531 (7th Cir. 1980). The district court did not err by admitting this evidence.

C. *Plaintiff's Bill of Costs*

Following trial, Abernathy filed a bill of costs. The only point of controversy is his claim for $3,800 for fees paid to his treating physicians for their depositions. The Railroad objected to these costs on the ground that 28 U.S.C. § 1821(b) limits witness fees to forty dollars per day unless some other provision of law provides for a higher rate. The district court

agreed with the Railroad and limited the witness fees in the bill of cost to forty dollars per witness per day.

We review the district court's award of costs for an abuse of discretion. See *Halasa v. ITT Educational Services, Inc.*, 690 F.3d 844, 852 (7th Cir. 2012); *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464 (8th Cir. 2015). However, we review legal questions related to the cost award *de novo*. See *Central States, Southwest Areas Pension Fund v. White*, 258 F.3d 636, 640 (7th Cir. 2001) (standard of appellate review is *de novo* on a question of law in interpreting a statute); see also *Stanley*, 784 F.3d at 464.

Both doctors' video depositions were sought by Abernathy himself, and he presented them as evidence at trial. He contends that Federal Rules of Civil Procedure 26(b)(4)(E)(i) and 54(d)(1) work together to supersede the forty-dollar-per-day limit of § 1821 and allow him, as the prevailing party, to recover the entire "reasonable fee" he paid his expert witnesses for their depositions.

We affirm the district court's denial of the higher witness fees. Abernathy's argument is contrary to the Supreme Court's interpretation of the interaction between these rules set forth in *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437 (1987), and is not supported by Seventh Circuit precedent. The district court properly limited the witness fees the Railroad must pay to forty dollars per witness per day.

In *Halasa*, we affirmed the district court's ruling that the prevailing defendant could be reimbursed for fees related to the deposition of an expert witness in excess of forty dollars per day under Rule 26(b)(4)(E)(i). We held that the "reasonable fee" requirement in Rule 26(b)(4)(E)(i) can, in certain cases, supersede the specific payment schedule in § 1821(b). 690 F.3d

at 852. However, the district court decision in that case was based on the fact that the deposition of that expert witness, though initially paid for by the defendant, had been taken *by the plaintiff. Halasa v. ITT Educational Services, Inc.*, 2012 WL 639520, at *2 (S.D. Ind. Feb. 27, 2012) ("Federal Rule of Civil Procedure 26(b)(4)(E)(i) provides that the party who deposes an expert witness—which in this case was Halasa—shall 'pay the expert a reasonable fee for time spent.'"). The defendant in *Halasa* had not insisted that plaintiff pay its witness at the time of the deposition, as it could have under Rule 26(b)(4)(E)(i). Instead, the defendant had paid its own witness his usual expert fee for time spent on the deposition the plaintiff had taken. The defendant waited until its final bill of costs to request that payment under Rule 26(b)(4)(E)(i).

Thus, because the defendant in *Halasa* was the prevailing party and because plaintiff, as the party who had sought the deposition of the defendant's expert, had an obligation under the Rule 26(b)(4)(E)(i) to pay the costs of that deposition, the district court was permitted to order that the defendant be awarded the amount of reasonable witness fees it actually paid, regardless of the fee limits set forth in 28 U.S.C. § 1821(b). Here, however, Abernathy is not asking that the costs of the depositions be reimbursed under Rule 26(b)(4)(E)(i). He instead seeks to have the costs of deposing his own expert witnesses reimbursed under Rule 54(d)(1) alone, a question that was not addressed in *Halasa*.

This case is much closer to the Supreme Court's decision in *Crawford Fitting*, which rejected Abernathy's interpretation of these rules. The issue in *Crawford Fitting* was whether a party could be reimbursed under Rule 54(d)(1) for the higher expert fees it had paid to have its own expert witness testify

at trial. 482 U.S. at 438–39. The Court rejected that claim, holding that "when a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limit of § 1821(b), absent contract or explicit statutory authority to the contrary." *Id.* at 439. The Court found that the rule and statute did not conflict, and that while Rule 54(d)(1) permits prevailing parties to recover costs, § 1821(b) places a limit on the amount that can be recovered. *Id.* at 444–45.

Abernathy argues that we should distinguish *Crawford Fitting* and instead follow and extend the reasoning of the Eighth Circuit in *Stanley v. Cottrell, Inc.*, 784 F.3d 454, 464–65 (8th Cir. 2015), which allowed Cottrell, the prevailing party, to recover the full expert witness fees it actually paid to Stanley under Rule 26(b)(4)(E)(i) during discovery to take the deposition of Stanley's expert witness. Whether *Stanley* was correct or not on its own facts, its reasoning does not extend to the case before us, where the prevailing party seeks to recover full expert fees for the depositions of his own expert witnesses. This is *Crawford Fitting*, except that we address here expert depositions rather than expert trial testimony. It would be a mistake to limit *Crawford Fitting* on that basis. If we held that prevailing parties could recover under Rule 54(d) the full costs of deposing their own expert witnesses before trial, but not of calling those expert witnesses to testify live at trial, see *Crawford Fitting*, we would create an incentive for parties to offer expert depositions at trial in lieu of live expert testimony. Nothing in the text or logic of the rules calls for such a perverse incentive, and we see no persuasive reason to distinguish this case from *Crawford Fitting*.

The judgment of the district court and its award of costs are AFFIRMED.