David HARBIN, Plaintiff–Appellant,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,**
Defendant–Appellee.

No. 89–3466.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1990.

Decided Dec. 27, 1990.

Jay R. Giusti, Fred Wilner, Chicago, Ill., for plaintiff-appellant.

John Newell, Kenneth J. Wysoglad, Michael L. Sazdanoff, Robert J. Prendergast, Wysoglad & Associates, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, CUDAHY and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

At issue in this case is the quantum of evidence necessary to survive a summary judgment motion under the Federal Employers' Liability Act (the "FELA"), 45 U.S.C. §§ 51–60 (1982). David Harbin filed suit against his former employer, the Burlington Northern Railroad Company (the "Railroad"), pursuant to the FELA. Harbin alleges that he suffered a heart attack as a result of the Railroad's failure to furnish a reasonably safe work environment. Finding insufficient evidence of negligence, the district court granted the Railroad's motion for summary judgment. Because we believe that Harbin presented enough evidence to go before a jury on the question whether the Railroad was negligent, we reverse.

I.

The facts underlying this case are fairly straightforward. One aspect of Harbin's employment as a boilerman for the Railroad entailed the cleaning of boilers. The three heating boilers located in the building known as the "roundhouse" would be scraped clean once every year. The cleaning process comprised two steps. First, by pushing and pulling a vibrating brush mounted upon a long pole, the worker would dislodge the soot, rust and other grit that had accumulated over the course of the year upon the boilers' interior walls.

This debris would then be forced out of the boilers and dispersed into the open air by means of an air pressure hose. Harbin spent several days cleaning the boilers in this manner. On the third day, after laboring for eight hours on this task, he experienced pain in his chest and left arm, felt short of breath and perspired more heavily than usual. Later that night, Harbin was taken to the hospital where he was diagnosed as having suffered a heart attack.

The roundhouse where Harbin worked possessed no special system of ventilation, despite the fact that locomotives left running in the building generated clouds of exhaust fumes and the boiler cleaning process itself flooded the air with soot and other particles of debris. Even after Harbin and several other employees complained of inadequate ventilation to Railroad foremen, the Railroad took no action to alleviate the problem. The Railroad did, however, allow other employees to vacate the area while the boilers were being cleaned. It also supplied workers with breathing cups to be placed over the mouth to prevent the inhalation of foreign particles.

Harbin's complaint alleges that the Railroad negligently caused his heart attack. He charges the Railroad with negligence for failing to provide adequate ventilation or proper equipment with which to perform the boiler cleaning task. Harbin claims that the breathing cups—which covered only his mouth, and not his nose—offered scant protection from a work environment pervaded with soot and other particles of debris. In fact, he was forced to change his breathing cup three or four times each day because it would become encrusted with exhaled soot: "They'd be full of that stuff. It would be black as that briefcase sitting down there. It would be all in your nose, you wash your face, you breathe, you sneeze, you blow it all out." Harbin Dep. at 87. He contends that the Railroad should have supplied larger face masks or should have utilized a safer method of removing the soot dispersed in the boiler cleaning process, such as a vacuum cleaner.

Harbin proffers the testimony of a medical expert, Dr. Slodki, to establish a link between the Railroad's negligence and his injury. At his deposition, Dr. Slodki testified that inhalation of particulate matter may irritate the lungs, causing impairment of oxygen in the blood stream and forcing the heart to pump at a rapid rate. Dr. Slodki offered his opinion that the strenuous physical exertion involved in cleaning the boilers, compounded by the additional stress upon the heart attributable to the sooty atmosphere, precipitated Harbin's heart attack.

Although the district court found enough evidence of causation to go to a jury, it granted summary judgment for the Railroad on the ground that there was insufficient proof of negligence. Without knowledge of the precise quantity or composition of soot present in the air, the court held that a jury would be unable to assess the reasonableness of the Railroad's conduct. On appeal, Harbin argues that evidence of the exact amount of particulate matter in the air is unnecessary for this case to go to a jury in light of the broad remedial objectives underlying the FELA.

## II.

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment whenever "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." No genuine issue of material fact exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). This standard generally demands much more than a scintilla of evidence: "If the evidence is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11.

*Liberty Lobby* simultaneously exhorts the trial judge, however, to "view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513. In reviewing a

motion for summary judgment, the judge must thus "bear in mind the actual quantum and quality of proof necessary to support liability...." *Id.* It is well established that the quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence action. *See Caillouette v. Baltimore & Ohio Chic. Terminal R.R. Co.*, 705 F.2d 243, 246 (7th Cir.1983); *Heater v. Chesapeake & Ohio Ry. Co.*, 497 F.2d 1243, 1246–47 (7th Cir.1974), *cert. denied*, 419 U.S. 1013, 95 S.Ct. 333, 42 L.Ed.2d 287 (1974); W. Prosser & W. Keeton, *The Law of Torts* § 80, at 578–79 (5th ed. 1984) ("there appears to be little doubt that under the [FELA] statute jury verdicts for the plaintiff can be sustained upon evidence which would not be sufficient in the ordinary negligence action"). For under the FELA, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury...." *Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957) (emphasis added). It follows that a trial judge must submit an FELA case to the jury when there is even slight evidence of negligence. *See Wilson v. Chicago, Milw., St. P., & Pac. R.R. Co.*, 841 F.2d 1347, 1353 (7th Cir.1988) ("[t]he evidence required for a finding of negligence [under the FELA] dictates a corresponding 'slightest' hurdle for avoiding" summary judgment), *cert. dismissed*, 487 U.S. 1244, 109 S.Ct. 1, 101 L.Ed.2d 953 (1988); *Lancaster v. Norfolk & W. Ry. Co.*, 773 F.2d 807, 820 (7th Cir. 1985) ("the plaintiff in an FELA case can get to the jury with even slight evidence of negligence"), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

The lenient standard for avoiding summary judgment under the FELA merely mirrors the pro-plaintiff slant of the substantive law. Dissatisfied with the common law duty of the master to his servant, Congress enacted the FELA to require employers to shoulder responsibility for damages attributable in whole or in part to their negligence. *See Rogers*, 352 U.S. at 507–08, 77 S.Ct. at 449–50. The right to a jury determination is part and parcel of the liberal remedy afforded the working person under the FELA. *See Bailey v. Central Vt. Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943). It is the province of the jury to weigh myriad factors, including the nature of the task and the hazards it entails, in determining whether employer fault played any role in the employee's injury. *See id.* at 353–54, 63 S.Ct. at 1064–65; *Ackley v. Chicago & N.W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987). And a jury verdict can be set aside "[o]nly when there is a complete absence of probative facts to support the conclusion reached...." *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946).

In rather colorful language, the Railroad protests here that Harbin's evidence " 'amounts to nothing more than pure fantasy and contains less substance than broth brewed from the bones of a starved pigeon.' " Appellee's Br. at 9 (quoting *Baum v. Baltimore & Ohio R.R. Co.*, 256 F.2d 753, 756 (7th Cir.1958), *cert. denied*, 358 U.S. 881, 79 S.Ct. 121, 3 L.Ed.2d 111 (1958)). We disagree. Harbin has adduced ample evidence bearing upon the Railroad's negligence to raise a jury question. The facts establish that locomotives emitting clouds of exhaust fumes were left running in an area with no special system of ventilation. In this same building, Harbin was directed to scrape clean boilers using a process that generated additional soot and debris. In fact, so much soot was produced that the mouth guards supplied by the Railroad turned black with exhaled soot and had to be discarded frequently. Impervious to repeated complaints of inadequate ventilation by Harbin and other employees, however, the Railroad took no action to rectify the problem. Instead of utilizing an air pressure hose to disperse the thick fog of soot particles generated in the boiler cleaning process, the Railroad might have employed a vacuum cleaner. Or perhaps it would have been more prudent for the Railroad to provide its employees with larger face masks to shelter the nose as well as the mouth.

Based upon this evidence, a jury could reasonably conclude that the Railroad's failure to employ a different boiler cleaning method or take additional precautions to ensure the safety of its employees was negligent.

Harbin need not identify the specific composition and density of soot present in his work environment to survive a summary judgment motion. While expert testimony documenting the hazards posed by the presence of so many parts per million of soot in the air would certainly enhance Harbin's case, it is not essential under the regime of the statute. We decline the Railroad's invitation to constrict the generous provisions of the statute by imposing upon FELA claimants the burden to produce such technical scientific evidence.

A long line of FELA cases reiterate the lesson that the statute vests the jury with broad discretion to engage in common sense inferences regarding issues of causation and fault. *See Rogers*, 352 U.S. at 510, 77 S.Ct. at 450 ("The decisions of this Court ... teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury."). The jury is the tribunal to which is delegated the duty to apply the elusive concepts of reasonable care and cause and effect to the manifold facts and circumstances of each individual case. *See Bailey*, 319 U.S. at 353–54, 63 S.Ct. at 1064–65. A jury is as qualified to infer a general risk of harm to employees forced to labor without ventilation in a sooty environment as it is to infer the possibility of injury from a rusty wire left lying about, or a stagnant pool of water, or the lifting of a heavy weight. Thus, in *Heater*, 497 F.2d at 1247, the court concluded that a jury could reasonably infer risk to employees who were directed to shift heavy weights. And in *Caillouette*, 705 F.2d at 246–47, the court upheld a jury verdict for a plaintiff who tripped upon a rusty wire carelessly left lying about on the Railroad's premises.

Although we discern no case presenting identical facts, numerous FELA actions have been submitted to a jury based upon far more tenuous proof—evidence scarcely more substantial than pigeon bone broth. In *Lavender v. Kurn*, 327 U.S. at 645, 66 S.Ct. at 741, for example, the plaintiff sued the Railroad on the theory that the decedent—who was found unconscious on the ground near the railroad track with a skull fracture—had been struck by the curled end of a mail hook protruding from a mailcar. The Missouri Supreme Court overturned a jury verdict for the plaintiff, but the Supreme Court reversed. And in *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Supreme Court upheld a jury verdict for a plaintiff who lost both his legs as a result of an infected insect bite based upon a rather remote connection between the injury and the employer's negligence in maintaining a stagnant pool of water attractive to vermin and insects.

In light of the broad remedial nature of the FELA, we find sufficient evidence to submit to a jury Harbin's allegations that the Railroad's failure to furnish a reasonably safe work environment contributed to his injury. Therefore, the district court's entry of summary judgment in favor of the Railroad is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.