**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 5, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GEORGE M. EZELL,

      Plaintiff - Appellant,

v.

BNSF RAILWAY COMPANY,

      Defendant - Appellee.

No. 19-6018

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:15-CV-00968-R)**
_____

Richard L. Carlson, Hunegs, LeNeave & Kvas, P.A. (William Kvas, Hunegs, LeNeave & Kvas, P.A., and Clint Russell, Stratton Taylor, and Mark H. Ramsey, Taylor Foster Law Firm, with him on the briefs), Wayzata, Minnesota, for Appellant.

George R. Mullican (Christopher D. Wolek and Michael Womack with him on the brief), of Mullican & Hart, P.C., Tulsa, Oklahoma, for Appellee.
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

Throughout American history, railroad workers have risked their lives and limbs to satisfy our Nation's need to have freight shipped across the United States. To recompense those workers for the injuries they suffer from their occupation,

Congress enacted the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51–60. FELA permits injured railroad workers to sue their railroad employers for negligence. To succeed, employees must present some evidence showing that their workplaces were not reasonably safe. For purposes of summary judgment, we credit George Ezell's account that to complete his assigned task, he had to climb railcar ladders to see which railcars were more than half full of ballast. Even with that, the evidence establishes that to do their jobs railroad conductors need to climb the ladders and that this is a reasonably safe activity. For that reason, we agree with the district court's dismissal of this case. Ezell's proffering what he believes are safer alternatives does not show negligence. We affirm.

## BACKGROUND

## I.     Factual Background

Ezell was a conductor for BNSF Railway Company. On May 2, 2014, the trainmaster, Michael Castleberry, directed Ezell to detach twenty ballast-loaded railcars from a train about to enter the Enid, Oklahoma train yard. Earlier that day, a maintenance-of-way crew had used ballast from at least some of the railcars while working to maintain the track. Ezell testified that Castleberry did not tell him what counted as a loaded railcar. But Ezell testified that Shawn Jernigan, the yardmaster, had previously told him to treat ballast railcars as loaded if they were more than half full.[1] Jernigan contested ever doing so.

---

[1] Ezell also testified that he had been previously told that a railcar is fully loaded if an employee, standing on the ground, can see the ballast's peak above the

2

As Ezell took charge of the entering train, two crews previously with the train left it. The first was the maintenance-of-way crew, and the second was a crew that Ezell's crew was relieving. Despite internal rules that Ezell asserts required them to "keep a good list"—a list that he says would have documented "empties and loads"—neither crew provided him with such a list. Appellant's Opening Br. 8.[2]

Before Ezell's crew moved the train into the Enid railyard, Devon Miller, its brakeman, went ahead to configure the yard switches. Earlier, Miller had obtained a list of the train's railcars from Jernigan. As the train slowly entered the railyard, Miller noted for each railcar whether its wheel-assembly springs were compressed. He marked the railcars with compressed springs as loaded. Miller testified that he gave the list to Ezell. But Ezell could not remember getting the list. Whether he did or not, Ezell testified that even with Miller's list he would still have needed to climb

---

railcar. This prompted BNSF's attorney to ask Ezell who had told him "that for a rock car to be considered *a load*, you had to be able to see the peak of the mound from the ground?" Appellant's App. vol. 2 at 185 (emphasis added). But this mischaracterized Ezell's testimony that the mound had to be visible for a car to be considered *fully loaded*, not for it to be considered *loaded*. Even though Ezell responded that Jernigan had told him about such a rule, we understand Ezell's testimony as being that he was told a car was *fully loaded* if a mound was visible and *loaded* if it was more than half full. *Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018) ("On an appeal from a grant of summary judgment, we draw all reasonable factual inferences in favor of the non-moving party." (citation omitted)).

[2] We do not read these rules to provide the clear direction that Ezell claims they do: "Follow these requirements when unloading ballast cars: 14. Make sure ballast cars are empty with the doors properly closed and locked before releasing the cars. 15. Keep a good list of car numbers and release them promptly." Appellant's App. vol. 2 at 146; *see also* Appellant's App. vol. 1 at 64 ("Comply with all company safety rules, engineering instructions, training practices and policies.").

the railcar ladders to see which were more than half full of ballast—a more precise determination than compressed springs would give.[3]

During his three years with BNSF, Ezell had been involved with several ballast trains. He testified that he had often checked the content of the railcars by climbing the railcar ladders and looking inside. On this day, he used that same method for each inspection—he would climb the railcar ladder, reach with his left hand to grab "the top lip" (or flange), and then pull himself up to look inside the railcar.

Ezell safely performed this method for five or six railcars, but while inspecting the next railcar, his left hand slipped from the flange after he had let go of the ladder rung with his right hand. He was unable to resecure a grip with either hand and fell several feet to the ground, fracturing his right leg, right ankle, and left foot.

## II.    Procedural Background

Under FELA and the Federal Safety Appliance Act (FSAA), 49 U.S.C. §§ 20301–20306, Ezell sued BNSF for failing to provide him with a reasonably safe place to work. BNSF moved for summary judgment, arguing that its railcar complied

---

[3] BNSF makes much of Ezell's choosing to climb the railcar ladders despite having safer alternatives to determine whether a railcar was loaded. It argues that he could have (1) used a list, (2) checked the compression of the springs, (3) banged on the side of the railcar, or (4) thrown a rock into the railcar and listened for a hollow sound. But on summary judgment, we credit Ezell's testimony that these four alternative methods would not have enabled him to complete his assigned task of accurately identifying twenty loaded railcars to detach—that is, twenty railcars more than half full of ballast. Accordingly, the other four methods play no role in our analysis.

with the governing safety regulations and that Ezell had offered no evidence of BNSF's negligence. Ezell partially opposed that motion, claiming that BNSF had breached its duty to him in three ways: (1) by not having the maintenance-of-way crew or the train crew provide him with a list of the empty railcars, (2) by failing to provide him a tool to eliminate any need to climb the railcar ladders (a stick of some sort with a mirror), and (3) by failing to implement a policy defining what constituted a loaded railcar. Ezell conceded that his FSAA claim should be dismissed.

The district court granted summary judgment for BNSF on Ezell's FELA claim. On two bases, it ruled that "the undisputed evidence show[ed] that BNSF fulfilled its duty to provide Ezell with a safe place to work and with adequate and reasonably safe tools and equipment." Appellant's App. vol. 2 at 286. First, as Ezell admits, the railcar complied with federal regulations and was in good condition. Second, after considering testimony from Ezell's expert, Colon R. Fulk, the district court concluded that climbing a railcar is a safe activity and that it "is a regularly performed function of a conductor." *Id.* at 287. Because the evidence showed that BNSF provided a safe workplace even with conductors climbing railcar ladders, the district court concluded that Ezell's argument that BNSF could have provided even safer alternatives to climbing would not suffice to show any BNSF negligence. This appeal followed. We have appellate jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Standard of Review

We review de novo the district court's grant of summary judgment against Ezell's FELA claim. *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1251 (10th Cir. 2011)). We affirm "if the movant show[ed] that there [was] no genuine dispute as to any material fact and the movant [was] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making that decision, we view the evidence "in the light most favorable to the non-moving party." *Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1285 (10th Cir. 2018) (internal quotation marks omitted) (quoting *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007)). After "the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to 'specific facts showing that there is a genuine issue for trial.'" *May*, 929 F.3d at 1234 (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013)). The nonmoving party must be specific to satisfy its burden, either by "citing to particular parts of materials in the record" or by showing that the moving party has relied on insufficient or inadmissible evidence. Fed. R. Civ. P. 56(c)(1)(A)–(B).

### II. Deficient Appendix and New Theories

BNSF argues that we should not reach the substantive issues because Ezell has made procedural errors.

First, BNSF points out that Ezell failed to include in his appendix the summary-judgment briefing in the district court. BNSF argues that comparing his

6

district court briefing with his appellate briefing shows that Ezell is making new arguments on appeal. The issue is easily resolved. BNSF may cure the problem and "file a supplemental appendix of [its] own." *Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219, 1231 (10th Cir. 2008) (citing 10th Cir. R. 30.2(A)(1)). BNSF has done so, and we now have what we need to consider BNSF's argument.

Next, BNSF claims that in the district court Ezell "failed to raise the bulk of theories that he [now] offers." Appellee's Resp. Br. 17. BNSF lists the following as new "theories":

1. FELA plaintiffs only have the burden of showing slight negligence by the defendant.
2. BNSF's failure to follow its own rules creates a jury question.
3. By enacting its rules, BNSF recognized a need for them.
4. BNSF's work methods were inadequate since they were subjective.
5. BNSF had an obligation to provide better tools—that is, tools that would allow employees to determine if a railcar was loaded without requiring them to climb railcars.
6. Ezell's testimony creates a genuine issue of material fact.

But Ezell raised all six of these theories before the district court:

1. Ezell argued that BNSF could be liable if he showed that, "no matter how small" it was, BNSF's negligence played a role in causing his injury. Appellee's Suppl. App. vol. 2 at 165 (citation omitted).
2. Ezell claimed that the jury could find that BNSF breached its duty because it failed to provide him "with a list showing cars which were loaded versus empty." *Id.* at 166.
3. Ezell stated that providing a list was the "best practice[]" and that BNSF was negligent for not following its "best practice." *Id.* at 164, 166.
4. Ezell claimed that BNSF breached its duty because it did not adopt specific guidelines or procedures to determine whether railcars were empty, instead simply requiring employees to bang on the sides to decide if they thought the railcars sounded hollow.
5. Ezell argued that BNSF was negligent for not using a modified brake stick, a tool that would "allow[] workers to inspect the inside of cars for loads without having to climb on the car." *Id.* at 166–67.

7

6. Ezell stated that there were "[a]dditional facts precluding judgment as a matter of law." *Id.* at 160. To support that contention, he cited his deposition to dispute numerous facts asserted by BNSF—such as whether he was instructed that a railcar was loaded if it was more than half full and that "BNSF had no written guidelines with respect to whether a ballast car was loaded or empty." *Id.* at 161.

Though Ezell might be expanding on these theories now, he did present them in some form to the district court—he is not relying on different theories of liability. For instance, this situation is unlike one in which a plaintiff raises a negligent-failure-to-warn claim in the district court but then argues a negligent-design claim on appeal. *See, e.g.*, *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 722 (10th Cir. 1993) (citing *Grasmick v. Otis Elevator Co.*, 817 F.2d 88, 89–90 (10th Cir. 1987)). Instead, all of Ezell's claims are FELA claims rooted in one theory: BNSF was negligent because it did not take precautions that would enable Ezell to avoid climbing the railcar ladders to complete his assigned job task.

Furthermore, BNSF argues that all of these theories can and should be "distilled" into one inquiry: "whether the method prescribed by BNSF . . . was reasonably safe, not whether BNSF could have used a safer[,] alternative method for performing the task." Appellee's Resp. Br. 25–26. The district court agreed and found that BNSF's method was reasonably safe, and BNSF argues that we should now affirm on the same basis. But because BNSF casts Ezell's various arguments— old or new—as all part of one inquiry, the same inquiry as that made by the district court, we fail to see how BNSF can, at the same time, argue that Ezell's "new theories" present new issues.

8

### III.    Elements of a FELA Claim

FELA is a remedial law designed to "shift[] part of the 'human overhead' of doing business from employees to their employers." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 542 (1994) (quoting *Tiller v. Atl. Coast Line R.R.*, 318 U.S. 54, 58 (1943)). In part, FELA states:

> Every common carrier by railroad while engaging in [interstate] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51. We have derived from this four elements to a FELA claim: (1) the employee was injured within the scope of his employment, (2) the employment was in furtherance of the employer's interstate transportation business, (3) the employer was negligent, and (4) the employer's negligence played some part in causing the injury for which the employee seeks compensation under FELA. *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007); *see also Volner v. Union Pac. R.R.*, 509 F. App'x 706, 708 (10th Cir. 2013) (unpublished) (adopting *Van Gorder*'s elements).

Here, Ezell indisputably satisfies the first two elements, but BNSF argues that he fails on elements three and four.

All negligence questions start the same: did the defendant owe and breach a duty to the plaintiff? Without a duty to the plaintiff, courts and juries cannot say that

9

a defendant did anything wrongful vis-à-vis the plaintiff by acting or failing to act. *See CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703 (2011) (citing *Gallick v. Balt. & Ohio R.R.*, 372 U.S. 108, 119 n.7 (1963)). So, before we can consider causation, we must first determine whether Ezell has raised a genuine dispute about BNSF's owing and breaching a duty to him.

"A railroad has a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 558 (1987). The degree of that duty depends on the magnitude of risk—the greater the risk the greater the duty. *Bailey v. Cent. Vt. Ry.*, 319 U.S. 350, 353 (1943) ("[The employer's duty] is a duty which becomes more imperative as the risk increases." (internal quotation marks and citation omitted)). In considering whether a railroad has breached its duty, the Supreme Court has instructed us to ask whether the railroad "observe[d] that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[.]" *CSX Transp.*, 564 U.S. at 703 (internal quotation marks omitted) (quoting *Gallick*, 372 U.S. at 118).

Appraising negligence under FELA "turns on principles of common law . . . , subject to such qualifications [that] Congress" introduces. *Gottshall*, 512 U.S. at 543 (internal quotation marks omitted) (quoting *Urie v. Thompson*, 337 U.S. 163, 182 (1949)). And "[a]t common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain." *Bailey*, 319 U.S. at 352 (citations omitted); *see also* Dan B. Dobbs et al., The Law of Torts § 420 (2d ed.) (June 2019 update) ("[T]he employer owes a duty of reasonable care to furnish a

10

safe place in which to work." (citations omitted)). The duty is "measured by what is reasonably foreseeable under like circumstances." *CSX Transp.*, 564 U.S. at 703 (internal quotation marks omitted) (quoting *Gallick*, 372 U.S. at 118).

Thus, the Supreme Court has ruled that the railroad's duty to provide a safe workplace is a duty of reasonable care.[4] *E.g.*, *id.*; *Buell*, 480 U.S. at 558; *Gallick*, 372 U.S. at 118. Having outlined BNSF's duty, we will now address whether a genuine dispute exists about BNSF breaching that duty.[5]

---

[4] In a few older cases, some circuits have concluded that a railroad's duty is a heightened one and can be breached just by "slight negligence." *See, e.g.*, *Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 58 n.1 (2d Cir. 1996) (citing *Mullahon v. Union Pac. R.R.*, 64 F.3d 1358, 1364 (9th Cir. 1995); *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 825 (2d Cir. 1994); *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 267 (3d Cir. 1991)); *see also Ackley v. Chi. & N. W. Transp. Co.*, 820 F.2d 263, 267 n.6 (8th Cir. 1987) (analogizing a railroad's "special dut[y]" under FELA to the relationship between a school and its pupils). We too have used the slight-negligence term, albeit without specifying whether we were referring to fault or causation. *See Mo.-Kan.-Tex. Ry. Co. v. Hearson*, 422 F.2d 1037, 1040 (10th Cir. 1970). At other times, we have spoken of the need for railroads to "use ordinary care" and "do what a reasonably prudent person would do to make the work environment safe." *Volner*, 509 F. App'x at 709 (citing *Van Gorder*, 509 F.3d at 269). Whatever our earlier approach, in view of *CSX Transportation*, we conclude that the Supreme Court has discredited the notion that a railroad's duty to its employees is a heightened one that can be breached by slight negligence. 564 U.S. at 703; *see also Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335–36 (5th Cir. 1997) (en banc) (noting that the slight-negligence rule was derived from misreading Supreme Court precedent). But once an employee shows that the railroad has breached its duty, then the employee's burden of establishing causation is relaxed. *Rogers v. Mo. Pac. R.R.*, 352 U.S. 500, 506 (1957); *see also CSX Transp.*, 564 U.S. at 693–95, 697 (noting that *Rogers*'s relaxed-standard test refers to causation); *Gottshall*, 512 U.S. at 542–43 (same).

[5] Ezell asserts that even if BNSF had a duty of ordinary prudence BNSF's internal rules "ratcheted up" its duty. Oral Argument at 12:13–12:24. Assuming that BNSF's internal rules apply here and that Ezell did need to receive a "good list" indicating which cars were more than half full, we disagree that those rules

**IV. Ezell Has Failed to Show That Climbing a Railcar Ladder Is Not Reasonably Safe.**

Ezell claims that he needed to climb the railcar ladders to complete his assigned task—to determine whether each railcar was loaded, that is, more than half full of ballast. At the summary-judgment stage, we credit Ezell's testimony that Jernigan had defined a loaded railcar this way.

That takes us to the next step—did BNSF provide Ezell an unsafe workplace by requiring him to climb the railcar ladder to make a more precise determination? No, according to Ezell's expert witness, Colon Fulk. Fulk testified that it would not be "unreasonable for a railroad to expect a conductor to climb on a railcar" and conceded that conductors "do it all the time." Appellant's App. vol. 2 at 266. He also agreed that "it is not an unreasonable risk for BNSF or any railroad to expect its railroad . . . employees to climb a railcar" as "part of the[ir] job requirements[.]" *Id.* at 268–69. He opined that there would be "[n]othing unreasonable about a yardmaster" ordering a conductor "to visually inspect every car." *Id.* at 267. And

---

augmented BNSF's duty. While a company's internal rules "are admissible to show negligence," those rules "do not alter the applicable standard of care." *Robinson v. Mo. Pac. R.R.*, 16 F.3d 1083, 1091 (10th Cir. 1994); *Fulton v. St. Louis–S.F. Ry.*, 675 F.2d 1130, 1133 (10th Cir. 1982); *see also Therrien v. Target Corp.*, 617 F.3d 1242, 1256 (10th Cir. 2010) (approving a jury instruction that allowed admission of Target's internal policies with the limitation that "the finding of a violation of policy or procedure should not be equated with a finding of negligence"). Here, Ezell offers BNSF's internal rules to heighten—or ratchet up—BNSF's duty, but these cases preclude such an enhancement of the standard of care.

when asked if he "st[oo]d by [his] testimony that asking a conductor to climb a railcar is not an unsafe task," he said, "[t]hat's true." *Id.* at 270.[6]

To operate its railroad, BNSF must sometimes have its employees climb railcar ladders. In addition to checking how full railcars are, expert Fulk identified another reason that BNSF employees might need to climb the ladders—BNSF policy requires maintenance-of-way crew members to "climb ballast cars to ensure that the loads are balanced[.]" *Id.* at 272–73. He also testified that conductors "often have to [climb] to set hand brakes[.]" *Id.* at 266.

BNSF met its initial burden of showing a safe workplace, even when requiring employees to climb railcar ladders. In response, Ezell impermissibly expands the safe-workplace standard as requiring the safest alternative available. For instance, Ezell argues that he never would have had to climb the ladder if BNSF had supplied him some sort of mirror on a stick. And he argues that he would not have had to climb the railcar ladder had BNSF enforced its internal rules requiring the maintenance-of-way and train crews supply him with a list of loads and empties. But to show railroad negligence, FELA requires plaintiffs to show an unsafe workplace— not a failure to provide the safest possible workplace. *E.g.*, *Darrough v. CSX Transp.,*

---

[6] Importantly, BNSF has a safety rule imposing requirements on its employees climbing railcar ladders. Employees must "[m]aintain three-point contact"—that is, maintain contact with "both feet and one hand or both hands and one foot"—while "ascending or descending ladders or platforms." Appellee's Suppl. App. vol. 1 at 83. Although the rule itself does not state what employees must maintain three-point contact with, Ezell's expert testified that one purpose of the rule is to require "contact with safety appliance[s]" that will hold an employee's weight. Appellant's App. vol. 2 at 254. The flange above the ladder does not qualify as a safety appliance.

*Inc.*, 321 F.3d 674, 676 (7th Cir. 2003) ("CSXT did not have to create the safest possible work environment . . . only a reasonably safe one."); *Walker v. Ne. Reg'l Commuter R.R.*, 225 F.3d 895, 899 (7th Cir. 2000) ("Safer methods of lifting may be available, but Metra need only use a reasonably safe method for lifting the blade." (citation omitted)); *Stillman v. Norfolk & W. Ry. Co.*, 811 F.2d 834, 838 (4th Cir. 1987) (explaining that the district court did not even need to admit evidence that the railroad had access to a safer, alternative method when the primary method was itself safe); *Soto v. S. Pac. Transp. Co.*, 644 F.2d 1147, 1148 (5th Cir. 1981) (per curiam) ("That there were other, arguably more advanced, methods in use by the defendant for cleaning these pits is of no significance where the method in use by Mr. Soto was not an inherently unsafe one.").

Because BNSF did provide Ezell a safe workplace, even according to his own expert witness, we agree with the district court that it is entitled to summary judgment. Accordingly, we affirm.